**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARRY MARSHAK, | |
| Plaintiff, | Civ. No. 95-3794 (DRD) |
| v. | **O P I N I O N** |
| FAYE TREADWELL; TREADWELL'S DRIFTERS, INC.; and THE DRIFTERS, INC., | |
| Defendant. | |

*Appearances by:*

THE SALVO LAW FIRM, P.C.
by:  Cindy D. Salvo, Esq.
101 Eisenhower Parkway, Suite 300
Roseland, NJ 07068

   *Attorneys for Faye Treadwell and Treadwell's Drifters, Inc.*

MEISTER SEELIG & FEIN LLP
by:  Jeffery Schreiber, Esq.
2G Auer Court
Williamsburg Commons
East Brunswick, NJ  08816

PRYOR CASHMAN LLP
by:  William L. Charron, Esq. (*pro hac vice*)
       Maryaneh M. Simonian, Esq. (*pro hac vice*)
410 Park Avenue
New York, NY  10022

*Attorneys for Larry Marshak, Andrea Marshak, Paula Marshak, Charles Mehlich, Barry Singer, DCPM, Inc., Cal Cap Ltd., Singer Management Consultants, Inc., and Dave Revels*

LOWELL B. DAVIS, Esq.
One Old County Road
Carle Place, NY 11514

   *Pro Se*

## DEBEVOISE, Senior District Judge

In this trademark infringement case, the Court must consider three related motions. Larry Marshak ("Marshak"), Andrea Marshak ("Andrea"), Paula Marshak ("Paula"), Charles Mehlich, Barry Singer, DCPM, Inc., Cal Cap Ltd., Singer Management Consultants, Inc., Dave Revels, (collectively the "Marshak movants"), and Lowell Davis have filed two motions for reconsideration, pursuant to Rule 52, Rule 59, and Rule 60 of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(*i*). The first motion seeks reconsideration of the Court's September 7, 2007, Opinion and Order finding the Marshak movants and Davis in contempt of Judge Nicholas H. Politan's order, dated August 16, 1999, which permanently enjoined Marshak's use of the name, "The Drifters," or any other name that would be confusingly similar to "The Drifters," in the occurrence, sale, promotion, or advertising of live or recorded musical performances. The second motion seeks reconsideration of the Court's September 25, 2007, Supplementary Order, which imposed sanctions against the Marshak movants[1] and Davis for their violation of the August 19, 1999, Order.

---

[1] Live Gold Operations, Inc., although not named in Treadwell's motion for contempt, was added as a contemnor in the Supplementary Order because it is the successor to DCPM Operations, which was held in contempt by the September 7, 2007, Order. The Marshak movants have not disputed that Live Gold Operations is the successor to DCPM Operations.

2

Also before the Court is Faye Treadwell's and the Treadwell's Drifters, Inc.'s (collectively "Treadwell") application for attorneys' fees and costs, pursuant to the Supplementary Order and Local Civil Rule 54.2, covering the motion for contempt through the entry of the September 25, 2008 Supplementary Order.

For the reasons set forth below, the motions for reconsideration of the September 7, 2007, Opinion and Order will be denied because no adequate grounds for reconsideration have been presented.  The motion for reconsideration of the September 25, 2007, Supplementary Order will be granted as to the award of an accounting for profits and treble damages and denied as to the application for attorneys' fees and costs.

## I.  BACKGROUND

The background to these motions, including the relationship between the Marshak movants, is set forth in three previous opinions.  See Marshak v. Treadwell, 58 F. Supp. 2d 551 (D.N.J. 1999) (decision enjoining Treadwell's use of the name "The Drifters") (hereinafter Marshak I); Marshak v. Treadwell, 240 F.3d 184 (3d Cir. 1999) (Marshak's appeal of the decision of the District Court); Marshak v. Treadwell, 2007 U.S. Dist. LEXIS 66622 (D.N.J. Sept. 7, 2008) (decision finding the Marshak movants in contempt) (hereinafter Marshak II).  For reasons of judicial economy, only the September 7, 2007, Opinion and Order and subsequent developments will be discussed here.

On September 7, 2007, the Court entered an order and opinion denying Marshak's motion to vacate or modify the August 16, 1999, Order and granting Treadwell's motion for contempt by Larry Marshak, Andrea Marshak, Paula Marshak, Charles Mehlich, Dave Revels, Lowell B. Davis, DCPM, Inc., Cal-Cap Ltd., Barry Singer, and Singer Management Consultants, Inc.  The

Court found that the three elements of contempt had been established through clear and convincing evidence.  First, the Court found that the August 16, 1999, Order was a valid court order.  Marshak II, 2007 U.S. Dist. LEXIS, at *20.

Next, the Court found that Andrea, Paula, Mehlich, Revels, and Davis knew of the August 16, 1999, Order and were therefore bound by it, even though they were not parties to the original action, because they were servants, employees, or agents of Marshak and his company, RCI.  Id. at **24-25.  The injunction was found to extend to DCPM, Inc. and Cal-Cap, even though they were formed after the August 16, 1999, Order had been entered, because they were successors in interest to Marshak's company, RCI, which was enjoined by the order, and the injunction did not lapse with the dissolution of RCI.  Id. at *25.  The August 16, 1999, Order was also found to be enforceable against Barry Singer and Singer Management Consultants because of Singer's business associations with Mehlich (co-owner of Singer Management with Barry Singer) and Davis (attorney for service of process for both the Elsbeary Hobbs Drifters and Singer Managment) and because Singer testified that he was aware of the injunction and that he understood its effect.  Id. at **34-35, 38.

Finally, the Court found that the August 16, 1999, Order had been violated because the Marshak movants had "engag[ed] in an elaborate shell game through their creation of various business identities in an attempt to deceive Treadwell and the Court," id. at *40, and "continued to sell, promote, and advertise a singing group using the name The Drifters," despite their awareness of the August 16, 1999, Order, id. at *49.  Therefore, the Court held the Marshak movants in contempt for either directly violating the injunction or aiding and abetting in its violation.

4

The Court also found that Treadwell did not lose her rights to the use of the name "The Drifters" to Odessa Hobbs because the same argument had been rejected in Marshak I, 58 F. Supp. 2d at 564, and the rejection affirmed by the Court of Appeals.  Marshak II, 2007 U.S. Dist. LEXIS, at *50.  Nor did Treadwell lose her rights to the use of the name "The Drifters" to William B. Pinkney.  Id.  Pinkney's rights were found to be inferior to those of Treadwell because Pinkney relinquished any rights to the name when he signed an employment agreement with The Drifters, Inc.  Id. at 54.  In addition, Larry Marshak had no valid right to use the name "The Drifters," because any agreement between Marshak and Pinkney had been vitiated by fraudulent representations that Marshak made during his trademark registration process.  Id. at 58.

Following the entry of the September 7, 2007, Order, Treadwell submitted a letter requesting that the Court enter a supplementary order because the September 7, 2007, Order, which granted Treadwell's motion, did not address the issue of sanctions.  Indeed, Treadwell's November 27, 2006 Notice of Motion for Contempt stated that she and the other defendants were seeking contempt, sanctions, monetary damages, attorneys' fees, costs, and an accounting against Marshak, Andrea, Paula, DCPM, Cal-Cap, Singer, Singer Management Consultants, and Davis.  Thus, Treadwell requested that the supplementary order include an accounting, an award of treble profits, an award of costs and attorneys' fees associated with the contempt motion, the inclusion of Live Gold Operations, Inc. as a contemnor, and a specific order that all performances by the Elsbeary Hobbs Drifters be immediately canceled.

The Marshak movants responded by informing the Court that they intended to move for reconsideration of the September 7, 2007, Opinion and Order and requested that the Court refrain

from entering any supplementary order until after the reconsideration motion was decided.  The

Marshak movants then filed their motion for reconsideration on September 20, 2007.

Nevertheless, on September 25, 2007, the Court signed Treadwell's proposed supplementary

order without alteration.  Because the supplementary order was entered without hearing formal

opposition, the Marshak movants submitted a motion for reconsideration of the September 25,

2007, Supplementary Order on October 5, 2007.

Treadwell then filed an application for attorneys' fees.  The application was brought

pursuant to the Supplementary Order, which stated that the Marshak movants, including Davis,

and Live Gold Operations, Inc. were required to pay Treadwell's attorneys' fees and costs in

connection with the contempt motion, but did not specify an amount.

## II.  MOTIONS FOR RECONSIDERATION

The Marshak movants have filed two motions for reconsideration.  First, they are seeking

reconsideration of the September 7, 2007, Opinion and Order.  They are also seeking

reconsideration of the September 25, 2007, Supplementary Order.

Although the moving parties have pointed out several factual errors in the September 7,

2007, Opinion, neither the Marshak movants nor Davis have provided grounds for

reconsideration, and consequently, the Marshak movants' and Davis's motions for

reconsideration of the September 7, 2007, Opinion and Order will be denied.  Because the Court

did not consider the Mashak movants' objections and give them an opportunity to be heard

before entering the September 25, 2007, Supplementary Order, the Court will treat the motion to

reconsider the Supplementary Order as an opposition to the relief provided in the Supplementary

Order and address the objections at this time.  Upon reconsideration of the Supplementary Order,

the Court will award attorneys' fees and costs and but will vacate the award of an accounting for profits and of treble damages.

## A. Claimed Factual Errors

The moving parties correctly note that there are several errors in the factual findings of the September 7, 2007, Opinion. They contend that when these errors are corrected, no basis remains for finding the moving parties in contempt.

The September 7, 2007, Opinion found that sometime prior to 1998, Marshak formed RCI, which engaged in organizing, managing, and promoting singing groups and staging concerts. The Opinion held that pursuant to the August 16, 1999, Order, not only was Marshak directly enjoined, but also enjoined were Andrea, Paula, Mehlich, and Revels, as servants, employees, or agents of Marshak in his business entity RCI. The Opinion also held that after Marshak's dissolution of RCI, the injunction extended to DCPM, Inc., and Cal Cap as successors in interest to RCI.

The error in the Opinion is contained within the statement that:

> Ostensibly due to Marshak's ill health, but coincident with the August, 1998, unfavorable verdict returned against him by the jury in Marshak v. Treadwell, Marshak, by his own admission, and by the admissions of Andrea, Paula, and Mehlich, dissolved RCI. About the time that Marshak dissolved RCI, however, Andrea, Marshak's wife, formed DCPM, Inc. [Andrea's Testimony, Transcript 100 at lines 12-17]. DCPM, Inc. "[engaged] in the same kind of singing group promotion as had RCI" [Mehlich Dec. 2] and "basically picked up where RCI left off." [Paula Dec. 2]. DCPM, Inc. operated out of the Marshak home, using the same telephone and fax numbers as RCI, and managing, promoting, and organizing singing groups, including The Drifters, The Coasters, The Platters and The Marvelettes, and staging concerts and shows of primarily "doo-wop" musical groups. Marshak, in his declaration, refers to DCPM, Inc. "as a sort of successor to RCI Management. Inc." [Marshak Dec. 2]. In his

7

declaration, Revels referred to RCI as "DCPM's predecessor company." [Revels Dec. 3].

\* \* \*

Around the time that the new ownership scheme was implemented, Judge Politan entered his Judgment N.O.V. on July 30, 1999 upholding the jury determination that Marshak fraudulently had obtained the rights to use the name The Drifters and finding that Treadwell had not abandoned her rights to the name.

Marshak II, 2007 U.S. Dist. LEXIS 66622, at \*27-28 (emphasis added).

The factual errors in the above paragraph in the above paragraphs are the references to hte jury's unfavorable August 1998 verdict in the case before Judge Politan, with the suggestion that this might have motivated Marshak to dissolve RCI and transfer its operations to DCPM, Inc.  In fact, the jury found in favor of Marshak, and it was not until July 30, 1999, that Judge Politan issued his judgment n.o.v., setting aside the jury verdict and issuing the injunction against Marshak.  The moving parties also note that DCPM had been formed in January 1998, before the dissolution of RCI and well before Judge Politan's judgment n.o.v..  Thus, for a time, DCPM coexisted with RCI.

The September 7, 2007, Opinion must be deemed corrected in these respects, and no inferences adverse to the Marshak movants and Davis can be drawn from the time of RCI's abandonment of business operations and the fact of DCPM, Inc.'s organization.  This does not affect, however, the Court's controlling findings and conclusions of law concerning the relationship of Marshak and the other Marshak movants, including DCPM, Inc. and Cal Cap Ltd.

## B. Motion for Reconsideration Standard

Local Civil Rule 7.1(*i*) governs motions for reconsideration.[2]  A motion for

---

[2] Although the Marshak movants have moved for reconsideration under Rule 52, Rule 59, and Rule 60 of the Federal Rules of Civil Procedure, motions for reconsideration are not

reconsideration is "an extremely limited procedural vehicle." <u>Resorts Int'l v. Greate Bay Hotel & Casino</u>, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, the standard for reconsideration is high: "the party seeking reconsideration [must] show[] at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." <u>Max's Seafood Cafe v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999). Because reconsideration of a judgment after its entry is an extraordinary remedy, it should only be granted sparingly. <u>Yurecko v. PATH Corp.</u>, 279 F. Supp. 2d 606, 608 (D.N.J. 2003).

In this case neither ground (1), nor ground (2), is applicable; thus the Marshak movants must demonstrate the existence of a clear error of law or fact or the need to prevent manifest injustice. It is not enough for them to merely show a disagreement with the court's decision. <u>Gutierrez v. Ashcroft</u>, 289 F. Supp. 2d 555, 561 (D.N.J. 2003). Rather, the movants must show that the court overlooked a factual or legal issue that may alter the disposition of the matter, such as when dispositive factual matters or controlling decisions of law were brought to the court's attention, but not considered. <u>Yurecko</u>, 279 F. Supp. 2d at 609. <u>See</u>, <u>e.g.</u>, <u>Hackensack Riverkeeper v. Del. Ostego Corp.</u>, 2006 U.S. Dist. LEXIS 83472 (D.N.J. Nov. 16, 2006) (granting defendants' motion for reconsideration because the Court had not realized that the preemption issue had been argued and briefed, and was awaiting final decision, in a parallel case); <u>Source Search Tech. v. Lending Tree</u>, 2006 U.S. Dist. LEXIS 82451 (D.N.J. Nov. 13,

_____

expressly recognized by the Federal Rules of Civil Procedure. <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp. 2d 339, 345 (D.N.J. 1999). Thus, in the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(<i>i</i>).

2006) (granting plaintiff's motion for reconsideration because the Court overlooked fact that

plaintiff disputed defendants' definition of "goods and services" in the patent at issue).

**C.  Reconsideration of the September 7, 2007 Opinion and Order**

The Marshak movants, including Davis, submit that reconsideration of the September 7,

2007, Opinion and Order is warranted because it is based on clearly erroneous findings of fact

and conclusions of law.  But none of the arguments that Davis or the Marshak movants make in

support of reconsideration meet the high standard set by Local Civil Rule 7.1(*i*), and, as set forth

above, correction of the factual errors contained in that Opinion does not affect the Court's

ultimate findings and conclusion.  Instead, all eight of the moving parties' arguments merely

show their disagreement with the Court's conclusions, which is "not a proper basis for the grant

of reconsideration."  Howmedica Osteonics Corp. v. Zimmer, Inc., 2007 U.S. Dist. LEXIS

80514, at *13 (D.N.J. Oct. 30, 2007).

First, Larry Marshak argues that no clear and convincing evidence supports the Court's

finding of contempt.  Specifically, Marshak argues that the opinion concludes at several places

that he violated the letter, as well as the spirit of the injunction, but that it fails to cite any clear

and convincing evidence in support of its conclusion.

The Court has not overlooked the requirement that the "elements of contempt must be

shown by clear and convincing evidence."  Marshak II, 2007 U.S. Dist. LEXIS 66622, at *19

(stating standard for contempt).  Indeed, the Court found ample evidence to support its

conclusion that the injunction was violated.  See id. at **39-49.  Even though the Court did not

specify what actions had been taken by Marshak himself in violation of the injunction, the

conduct of his associates, and their related business organizations, was in clear violation of the

10

injunction.  Thus, even if Marshak did not promote a singing group using the name "The Drifters," his awareness that his associates were doing so constitutes a clear violation of the injunction.

Second, the remaining Marshak movants and Davis argue that it was clear error for the Court to find non-parties in contempt because the non-parties were not legally identified with Larry Marshak or his company, RCI.  They argue that DCPM and Cal Cap were not successors in interest or instrumentalities of Marshak or RCI and that Marshak was only an employee of RCI, and never an owner or director of DCPM.  By holding these non-parties individually liable for contempt, the Marshak movants argue that the Court is retroactively expanding the scope of the injunction.  Similarly, Davis argues that he had no relationship with Marshak that would support the Court's finding of contempt.

Third, Barry Singer and Singer Management argue that it was clear error to find that they aided and abetted the violation of the injunction.  Relying on the argument that Mehlich was not enjoined by the August 16, 1999, Order, Singer and Singer Management argue that they cannot be liable for aiding and abetting Mehlich's contempt of the order.

Fourth, the Marshak movants argue that it was clear error for the Court to use the 2002 media kit and the phone calls between Woods and DCPM as evidence of Revels' contempt. They also argue that because Treadwell did not sue Revels for contempt, the Court lacks jurisdiction to order contempt damages or sanctions against him.

Fifth, the Marshak movants argue that it was error for the Court to rely on the phone calls between a private investigator, David Woods, and DCPM because DCPM did not use the name "The Drifters" in commerce during those conversations.  Rather, they argue that any mention of

11

the name the Drifters, specifically the Elsbeary Hobbs Drifters, was not in connection with a service that DCPM offered or claimed to be able to sell.

Sixth, the Marshak movants argue that it was clear error for the Court to extinguish the rights of the Hobbs Estate vis-à-vis Treadwell and the rights of Pinkney vis-à-vis Treadwell to the name "The Drifters."  Specifically, the Marshak movants argue that the Court overlooked Treadwell's settlement with the Hobbs Estate; an agreement which should preclude Treadwell from complaining about Marshak's use of "The Elsbeary Hobbs Drifters" mark.  In addition, the Marshak movants argue that Treadwell is collaterally estopped from challenging the decision of the Trademark Trial and Appeal Board ("TTAB") that found Pinkney's use of the rights was senior to Treadwell's and that the opinion's finding that Pinkney abandoned his rights to the use of "The Drifters" mark is based on a misreading of Pinkney's employment contract.

Seventh, Davis argues that the Court misapplied the law in rejecting his laches and acquiescence defenses.  Davis argues that it has been years since Treadwell has had a performance using the name "The Drifters" and that during that time, Treadwell has been sitting on her rights to the name and has acquiesced to the use of the name "The Elsbeary Hobbs Drifters."

The Court is familiar with these arguments, having heard all of them before on the motion for contempt.  A motion for reconsideration may not be used to "ask the Court to rethink what it had already thought through—rightly or wrongly."  Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland, 744 F. Supp. 1311, 1314 (D.N.J. 1990).  Nor may a motion for reconsideration be used to revisit or raise new issues with the benefit of "the hindsight provided by the court's analysis."  United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  Rather,

12

such disagreements with the Court's conclusion should be raised on appeal, as they are "inappropriate on a motion for reconsideration." Yurecko, 279 F. Supp. 2d at 609). Because the Marshak movants have not demonstrated the need to correct a clear error of law or material fact or to prevent manifest injustice, but are merely asking the Court to revisit its conclusions, their motions for reconsideration of the September 7, 2007, Opinion and Order will be denied.

Finally, Davis argues that the Court has misapplied the law as it relates to contempt because the Court failed to consider whether there were grounds to doubt the wrongfulness of the use of the name "The Elsbeary Hobbs Drifters." Davis submits that he should not be held in contempt because the names "The Drifters" and "The Elsbeary Hobbs Drifters" are not confusingly similar. In addition, Davis seeks to introduce new evidence to show that Treadwell should be estopped from interfering with the use of the name "The Elsbeary Hobbs Drifters."

A party is in contempt if he violates an injunction, even if he sincerely believes the injunction to be invalid. Walker v. City of Birmingham, 388 U.S. 307, 314 (1987). Thus, because the injunction has not been invalidated, Davis must adhere to its terms. In addition, Davis may not submit any new evidence in support of his argument that he should not be held in contempt, such as his allegation that others are using "Drifters" in conjunction with a preceding name, because his evidence is not newly discovered. See Bohus v. Beloff, 950 F.2d 919, 930 (3d Cir. 1991) (defining newly discovered evidence as evidence that "could not have been discovered [earlier] through the exercise of reasonable diligence"). Because Davis could have produced his evidence along with his first motion, the Court will not consider it now as a grounds for reconsideration. See T.H. v. Clinton Twp. Bd. of Educ., 2006 U.S. Dist. LEXIS 40358, at *3 (D.N.J. Jun. 16, 2006) ("Re-argument is not a means by which to obtain a proverbial second bite

of the apple.").  Consequently, Davis's motion for reconsideration of the September 7, 2007,

Opinion and Order will be denied.

**D.  Reconsideration of the September 25, 2007 Supplementary Order**

As a procedural matter, the Marshak movants argue that it was error for the Court to enter

the Supplementary Order without first hearing their objections.  They contend that because

Treadwell made no formal application for the entry of the Supplementary Order, they were

deprived of the right to a hearing and the opportunity to oppose Treadwell's arguments in support

of the Supplementary Order.  Therefore, the Marshak movants argue that the Supplementary

Order should be vacated.

The Marshak movants position is well taken.  Consequently, their motions for

reconsideration of the Supplementary Order will be treated as a full scale opposition to

Treadwell's demand for the relief incorporated in that Order and will not be subject to the usual

limitations imposed upon a motion for reconsideration.

Treadwell's Notice of Motion for Contempt, filed on November 29, 2006, stated that

Treadwell was seeking contempt, sanctions, monetary damages, attorneys' fees, costs, and an

accounting.  The September 7, 2007, Opinion and Order granted Treadwell's motion, thus

continuing Judge Politan's injunction in effect, but failed to specify any sanctions against the

contemnors.

### *(1)  Accounting of Profits*

The Supplementary Order awarded Treadwell a full accounting of profits as damages for

the violation of the August 16, 1999, Order.  The Marshak movants argue that Treadwell has

failed to demonstrate her entitlement to damages because Treadwell suffered no actual damages

14

as a result of their actions.  They submit that Treadwell is not entitled to an accounting of profits because there has been no unjust enrichment, see Birthright v. Birthright, Inc., 827 F. Supp. 1114, 1143 (D.N.J. 1983), and because Treadwell has not shown any other monetary damages. In addition, they argue that Treadwell is not entitled to profits under a deterrence theory.  See id.

District courts have broad discretion in fashioning civil contempt sanctions.  Robin Woods, Inc. v. Woods, 28 F.3d 396, 401 (3d Cir. 1994).  Civil contempt sanctions are intended to be both compensatory and coercive because, on the one hand, they "seek to ensure that the innocent party receives the benefit of the injunction," while on the other, they are intended to compel the contemnor "into compliance with the court's order."  Id. at 400.

"An accounting of profits is a form of equitable relief and does not follow automatically from a showing of trade name infringement."  Suncoast Tours, Inc. v. Lambert Group, Inc., 1999 U.S. Dist. LEXIS 17635 (D.N.J. 1999) (citing Williamson-Dickie Mfg. Co. v. Davis Mfg. Co., 251 F.2d 924, 926 (3d Cir. 1958)).[3]  Rather than focus on prerequisites, such as unjust enrichment, the need for deterrence, or willfulness, the Court of Appeals for the Third Circuit has adopted a factor-based approach, which requires courts to consider the totality of the circumstances,[4] "in deciding whether equity supports disgorging the infringer's profits."  Banjo

_____

[3] In civil contempt actions involving trade name infringement, district courts are permitted to "use the Lanham Act remedies as a framework to fashion an appropriate sanction." Microsoft Corp. v. United Computer Res. of N.J., Inc., 2002 U.S. Dist. LEXIS 27067, at *41 (D.N.J. May 23, 2002); accord Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519 (11th Cir. 1990).

[4] Factors that a court could consider include, but are not limited to: "(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off."  Banjo Buddies, Inc., 399 F.3d at 175.

Buddies, Inc. v. Renosky, 399 F.3d 168, 175 (3d Cir. 2005) (finding that while willfulness is "an important equitable factor" in a court's decision to award an accounting for profits, it is "not a prerequisite to such an award").

In this case, there are factors supporting an accounting of profits.  All of the individuals found to be in contempt of the August 16, 1999, Order admitted that they knew of the injunction. Despite their awareness of the Order's prohibition of the use of the name "The Drifters" or any name that was confusingly similar, they continued to promote and book a singing group called "The Elsbeary Hobbs Drifters."  Indeed, actions taken by the contemnors, such as the mailing of a 2002 media kit that printed the words "Beary Hobbs" in small letters while the word "Drifters" was printed in a much larger font, indicate an intentional disregard of the August 16, 1999, Order.        Contrary to the Marshak movants' assertions, Treadwell is not required to show actual harm.  Consequently, their reliance on A & H Sportswear Inc. v. Victoria's Secret Stores, Inc., 2002 U.S. Dist. LEXIS 233 (E.D. Pa. Jan. 9, 2002), in support of their argument that Treadwell is not entitled to damages without a showing of actual harm, is misplaced.  A & H Sportswear dealt with the issue of whether, in addition to an injunction, a trademark infringer should be required to disgorge its profits when liability is found under the Lanham Act.  In this case, however, liability has already been found and an injunction already issued, and found to have been violated.

One factor, however, weighs heavily against awarding an accounting for profits in the circumstances of this case.  Treadwell has not established that she suffered actual damages nor that she has used "The Drifters" mark in the United States since 2001 other than to collect and split royalties with the Estate of Elsbeary Hobbs.  More important, Treadwell waited five years

before commencing this action arising out of the uses of "The Elsbeary Hobbs Drifters," despite knowing that at least some of the Marshak movants were using the name during that period. In the September 7, 2007, Opinion, the Court observed that "the delay in filing may have been inexcusable," but that because the Marshak movants had not shown prejudice, the defense of laches was not available. Marshak II, 2007 U.S. Dist. LEXIS, at *17.

On the other hand, while the defense of laches is not available, inordinate delay in filing this action bars Treadwell's entitlement to an accounting of past profits. See Univ. of Pittsburgh v. Champion Prods. Inc., 686 F.2d 1040, 1044-45 (3d Cir. 1982). To hold otherwise would permit a plaintiff to sit back and cause an alleged violator to run up profits which the plaintiff would ultimately claim. For that reason, Treadwell will be denied an accounting of profits, and the relevant provision of the Supplementary Order will be vacated.

### (2)  *Treble Damages*

The Supplementary Order awarded Treadwell treble damages on the grounds that the contemnors violation of the August 16, 1999, Order was willful. In assessing damages in a trademark infringement action, a court may award damages in any amount, "not exceeding three times" the amount found as actual damages. 15 U.S.C. § 1117(a). No damages are being awarded here in connection with the Court's finding of contempt. However, even if they were to be awarded, the treble damages provision of § 1117(a) would not be mandatory.

Although the Marshak movants willfully violated the injunction, treble damages would not be appropriate in this case. The purpose of disgorging a contemnor's profits is to return the injured party to the position it would have been in had the injunction not been violated. See Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994) ("Compensatory awards seek to

ensure that the innocent party receives the benefit of the injunction.").  An award of treble profits

in this case would be an unjustified windfall to Treadwell.  Thus, the award of treble damages

would not have been awarded even if an accounting had been ordered.  Therefore, the relevant

portion of the Supplementary Order will be vacated.

### (3)  Attorneys' Fees and Costs

The Supplementary Order awarded Treadwell attorneys' fees and costs incurred in

connection with the motion for contempt.  The Marshak movants and Davis object to this award

and argue that Treadwell is not entitled to attorneys' fees because their conduct was not

malicious, fraudulent, deliberate, or willful.  In a trademark infringement action, a prevailing

party is entitled to recover "the costs of the action," but attorneys' fees are only awarded in

"exceptional cases."  15 U.S.C. § 1117(a).  A case is exceptional when the infringer has engaged

in "culpable conduct," such as "bad faith, fraud, malice, and knowing infringement," and the

circumstances "warrant a fee award."  Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007).

In a contempt action, however, attorneys' fees and costs are awarded to cover the

expenses involved in demonstrating a violation of the injunction.  Such awards "compensate

complainants for losses incurred as a result of the contemnors' violations," Robin Woods Inc. v.

Woods, 28 F.3d 396, 401 (3d Cir. 1994), and make the innocent party whole, Halderman v.

Pennhurst State School & Hosp., 49 F.3d 939, 941 (3d Cir. 1995).  A finding of willfulness is not

a "prerequisite to an award of attorneys' fees against the violator of an injunction."  Robin

Woods Inc., 28 F.3d at 400.

An award of attorneys' fees and costs will return Treadwell to the position she would

have been occupied had the Marshak movants and Davis complied with the injunction. See

18

Robin Woods Inc., 28 F.3d at 400.  Relying on a court's "inherent power to reimburse a party for outlays incurred in securing an adjudication of contempt," Halderman, 49 F.3d at 941, the Court concludes that Marshak, the other individual contemnors, and DCPM, Inc., DCPM Operations, Cal-Cap, Singer Management, and Live Gold Operations, Inc. must reimburse the expenditure of attorneys' fees and costs.  Therefore, the Supplementary Order's award to Treadwell of attorneys' fees and costs incurred in bringing the contempt motion will remain in effect.

### III.  MOTION FOR ATTORNEYS' FEES AND COSTS

Having rejected the Marshak movants' and Davis's motions for reconsideration of the September 7, 2007, Order and Opinion and having sustained the award of attorneys' fees in the September 25, 2007, Supplementary Order, the Court now considers Treadwell's application for attorneys' fees and costs.  Treadwell's application seeks $90,225.00 in attorneys' fees and $1,343.34 in costs, for a combined sum of $91,568.34.  The Marshak movants, including Davis, oppose this amount on the grounds that many of the activities listed in the supporting affidavit should not be attributed to the contempt motion.  Having reviewed the submissions, the Court will grant Treadwel's application in its entirety and award $91,568.34 in fees and costs.

**A. The Lodestar Method**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  "The product of this calculation is called the lodestar," Apple Corps. v. Int'l Collectors Soc'y, 25 F. Supp. 2d 480, 484 (D.N.J. 1998), and it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services," Hensley, 461 U.S. at 433.  "The lodestar is strongly presumed to yield a reasonable

19

fee." <u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1035 (3d Cir. 1996).

The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of both the hours worked and rates claimed.  <u>Hensley</u>, 461 U.S. at 433; <u>Apple Corps.</u>, 25 F. Supp. 2d at 484.  Once the attorneys' fee applicant has produced satisfactory evidence,[5] the burden shifts to "the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended." <u>Apple Corps.</u>, 25 F. Supp. 2d at 485.  "If the party opposing the fee petition meets its burden of proving that an adjustment is necessary, the court has wide discretion to adjust the attorneys' fee." <u>Id.</u>

Once the lodestar has been computed, the "court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990).  A court, however, may not "decrease a fee award based on factors not raised at all by the adverse party." <u>Id.</u>

### *(1) Reasonableness of Hours Expended*

---

[5] Local Civil Rule 54.2(a), which governs motions for attorneys fees', requires "an attorney seeking compensation for services or reimbursement of necessary expenses" to file with the Court an affidavit which sets forth:

(1)    the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;

(2)    a record of the dates of services rendered;

(3)    a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;

(4)    the time spent in the rendering of each of such services; and

(5)    the normal billing rate for each of said persons for the type of work performed;

within 30 days of the entry of judgement or order.  L. Civ. R. 54.2(a).

The first step in calculating the lodestar is determining whether the number of hours expended was reasonable.  Any "hours that were not reasonably expended" must be excluded from the fee calculation.  Hensley, 461 U.S. at 434.  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."  Rode, 892 F.2d at 1183.

The total number of attorney hours may also be reduced when "the documentation of hours is inadequate."  Hensley, 461 U.S. at 433.  The fee petition must be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed,"  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996), and should include "fairly definite information as to the hours devoted to various general activities,"  Rode, 892 F.2d at 1190.  It is not necessary, however, "to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."  Id.

Treadwell's fee application contains billing records detailing the hours that Cindy Salvo, Esq., billed on behalf of the Salvo Law Firm, P.C., from the inception of the contempt proceeding through the end of September 2007.  The billing records show that counsel spent 360.9 hours on matters relating to the motion for contempt.

Davis, on behalf of himself and the other Marshak movants, argues that Treadwell has not provided the Court with sufficient evidence to warrant a finding that 360.9 hours is a reasonable number of hours.  He argues that the affidavit is conclusory in nature because it lacks the specificity needed to determine whether the actions were appropriately related to the contempt motion.  Davis submits that tasks are often lumped together, making it impossible to allocate time between reimbursable and other activities.

The Court of Appeals for the Third Circuit does not require attorneys to keep records by individual task.  See Washington, 89 F.3d at 1038; Rode, 892 F.2d at 1189-90.  The entries need only be specific enough to show that the hours were expended in connection with the contempt motion.  See Apple Corps., 25 F. Supp. 2d at 487.  Since all of counsel's time reported in the billing records was expended in connection with the contempt motion, the fact that multiple tasks are combined in one entry does not present an issue.

Davis also objects to numerous entries, which he submits were outside of the scope of the contempt motion and therefore should not be included in the total number of hours.  For example, Davis objects to the inclusion of any time (1) spent with Jon Baumen, as he was not a party to the contempt motion and only served as a minor witness at the hearing; (2) spent conversing with people in regards to the Marshak bankruptcy proceeding or about Reed Smith because there is no explanation of how this time contributed to demonstrating that the injunction had been violated; (3) spent on activities related to libel; (4) related to the preparation of the declarations of Barry Newman and Michelle Newman because the Court did not rely on these declarations; (5) spent with, or relating to, the private investigator, David Woods because counsel's involvement in Woods's investigation was improper and should not be compensated; (6) spent preparing the declaration of Loni Clark because the substance of the declaration was directed towards Jody Marshak, who was not found to be in contempt; (7) related to the opposition to motions in limine submitted by the Marshak movants because the motions were never decided; and (8) spent with Alonzo Smalls, as he only played a minor role in the contempt hearing.

Each of Davis's objections has been examined and none of them have merit.  As most

22

lawyers understand, a lot more goes into a motion for contempt than just drafting the brief.  In this case, in addition to researching and drafting her motion, counsel had to spend time investigating whether the injunction had been violated.  That evidence then needs to be presented to the Court in the form of declarations.  This evidence is part of counsel's case, regardless of whether the Court expresses its specific reliance on the evidence.  In addition, basic matters, such as service of process, communicating with the Court and with opposing counsel, are necessary even though they do not play a direct role in the final order.

Finally, Davis maintains that the amount of time drafting briefs, approximately 243 hours, and the time related to the preparation for the contempt hearing, approximately 64 hours, is excessive and unreasonable.  The Court finds, however, that neither of these figures is excessive or unreasonable.  Since the start of this contempt action, numerous briefs have been filed, including the brief in support of motion for contempt, opposition to a motion to vacate, four motions in limine, and post hearing briefs.  Figuring that Treadwell filed ten briefs, that breaks down to approximately 24 hours per brief, which is a reasonable amount of time to spend drafting a brief.  In addition, the 64 hours attributable to the contempt hearing includes the eleven hours that counsel spent in the hearing itself, which lasted two days, and six hours of travel time to and from the courthouse.  Deducting the seventeen hours leaves 47 hours of preparation time for the contempt hearing.  In this case, 47 hours is a reasonable amount of time to prepare for a two day contempt hearing.  See DirecTV, Inc., v. Clark, 2007 U.S. Dist 55023, at *15 n.1 (finding under the circumstances that a "five-to-one preparation to participation ratio" was not "unreasonable").

Thus, the Court concludes that the hours shown by counsel's billing records are

reasonable and will include all of the 360.9 hours in the lodestar calculation.

### (2) Reasonableness of the Hourly Rate

Treadwell proposes $250.00 as a reasonable hourly rate.  A "reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035.  "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." Public Interest Research Group v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995).

The Declaration of Cindy Salvo states that her billing rate of $250.00 is commensurate with the prevailing market rates in the community.  Neither the Marshak movants, nor Davis, have objected to the reasonableness of $250.00 as an hourly rate.  Thus, the Court concludes that the hourly rate is reasonable.

### (3) Lodestar Calculation

Having concluded that the number of hours reasonably expended in relation to the contempt motion is 360.9 and that the reasonable hourly rate is $250.00, the lodestar will be calculated by multiplying $250.00 times 360.9 hours.  The product of these numbers yields a total lodestar figure of $90,225.00.  The Court will award this amount to Treadwell as attorneys' fees.

A district court has broad discretion in determining the amount of an award of reasonable attorneys' fees.  Once the lodestar has been calculated, the Court "is permitted to adjust fees depending on the success of the party seeking fees." DirecTV, Inc., 2007 U.S. Dist. LEXIS 55023, at *20.  The "results obtained" is an "important factor" to an award of attorneys' fees. Hensley, 461 U.S. at 434.  Where the attorney for the prevailing party has "obtained excellent

results," that counsel should "recover a fully compensatory fee," which normally encompasses "all hours reasonably expended on the litigation." Id. at 435. If, however, the prevailing party "has achieved only partial or limited success," Hensley, 461 U.S. at 436, then the Court "can reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed," Rode, 892 F.2d at 1183.

Even though Treadwell was the prevailing party, the Marshak movants argue that she is not entitled to the full amount of fees requested because her theories of contempt liability were not accepted by the Court. They contend that Treadwell's motion for contempt succeeded almost entirely in spite of Treadwell's counsel's efforts and advocacy. Thus, they conclude, counsel is undeserving of having her fees reimbursed in full.

In addition, the Marshak movants argue that the principles of equity should be applied to reduce any award of attorneys' fees. They submit that because Treadwell delayed in bringing her action for contempt, their attorneys had to expend resources that they otherwise would not have expended to rebut stale evidence.

Neither of these arguments is persuasive. The amount of time that the Marshak movants' attorneys spent defending the motion for contempt has no bearing on the amount of fees to which Treadwell's counsel is entitled. In addition, Treadwell prevailed on her motion for contempt, therefore she is entitled to recover a fully compensatory fee. See Hensley, 461 U.S. at 435. Awards of attorneys' fees to a prevailing party should only be reduced based on the success of claims; not on the success of legal theories. See Hensley, 461 U.S. at 440 (holding that "hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable

fee," but that when the prevailing party "has won substantial relief," attorneys' fees should not be reduced "simply because the district court did not adopt each contention raised"); see also Washington, 89 F.3d at 1044 (reducing an award of attorneys' fees because the plaintiff only prevailed on one of his two central claims). In this case, just because the Court did not adopt all of Treadwell's arguments, does not mean that they did not contribute to her overall success. Therefore, the Court will award Treadwell's counsel the full amount of her requested fees.

**B.  Reimbursement of Costs**

Treadwell is also seeking reimbursement of costs in the amount of $1,343.34. The costs are composed of the transcript fee and charges for sending papers to the Court. Since these are reasonable expenditures and neither the Marshak movants nor Davis have objected to the imposition of costs, Treadwell will be awarded the full amount of her costs.

### IV.  CONCLUSION

For the reasons set forth above, the Marshak movants' and Davis's motions for reconsideration of the September 7, 2007, Opinion and Order will be denied. None of the arguments advanced by the Marshak movants or Davis were sufficient under the stringent standard of Local Civil Rule 7.1.

The Marshak movants' motion for reconsideration of the September 25, 2007, Supplementary Order will be granted. Treadwell is not entitled to an accounting of profits and her application for such relief will be denied, as will her request for an award of treble damages.

Finally, Treadwell's application for attorneys' fees and costs will be granted in its entirety. Both the numbers of hours spent and the hourly rate are reasonable. Therefore, Treadwell's counsel is awarded $90,225.00 as a reasonable fee in connection with the motion for

contempt and $1,343.34 in costs, for a combined sum of $91,568.34.

     The Court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: February 13, 2008